**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Marriage of | No. 55051-2-II |
| CHRISTINE ROOKARD, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| WILLIAM ROOKARD, | |
| Appellant. | |

GLASGOW, A.C.J.—William Rookard suffered a traumatic brain injury when he was assaulted while on vacation in Mexico. He receives United States Social Security Administration disability benefits as a result. Christine Rookard earns significantly more money than William receives in disability each month. As part of its order of dissolution of the Rookard's 28-year marriage, the trial court awarded William $850 of spousal maintenance for 3 years. William appeals both the amount and duration of the spousal maintenance award. We hold that the trial court did not abuse its discretion and affirm.

FACTS

William and Christine married in June 1991.[1] When William and Christine were on vacation in Mexico to celebrate their 25th wedding anniversary, William was assaulted and suffered a brain injury as a result. William qualified for Social Security disability benefits as a

---

[1] Because they share a last name, we refer to the parties by their first names for clarity.

result of the injury. The injury impacted William's ability to work, particularly the speed of his thinking process. After the injury, William received occupational therapy, which included a therapist going to his place of employment to determine what accommodations would be needed for William to return to work. William's employer made accommodations, and William returned to modified work but quit after about a year.

In March 2019, Christine filed a petition for dissolution. Christine and William generally agreed to the division of their property, but disagreed over the amount and duration of spousal maintenance to be awarded. William requested $2,200 per month in spousal maintenance for the duration of his life. Christine argued that $850 per month for 3 years was appropriate.

The parties proceeded to trial. William testified that he was living with his brother, mother, and niece, but he did not anticipate living there for a long time. William testified that he receives $1,655 per month in disability benefits. William explained that at that moment he did not need any financial assistance with his living expenses, but if he moved out of his brother's home, he would. William submitted a financial declaration reflecting a monthly gross income of $1,655, monthly living expenses of $700, and monthly credit card payments of $250.

The trial court asked William if he had attempted to find work since his accident, and William responded that he had not. William testified that when he returned to work after his accident, he got "really frustrated with stuff." Verbatim Report of Proceedings (VRP) at 89. William testified to rehabilitative services offered by the Social Security Administration, specifically, "[A] class you can go to, basically getting a job for 15 hours a week," but explained that he had not engaged in this service because he "was getting too frustrated." VRP at 90. The trial court asked William if he had any resources that could help him deal with "the natural

frustration somebody might feel with decreased abilities to do what they always did before." *Id.*

William responded that his Medicare coverage would include counseling for anger management

and post-traumatic stress disorder. When the trial court asked if there was anything else preventing

William from exploring such possibilities, William responded, "No, sir." VRP at 92.

The trial court awarded William $850 per month for 3 years. In its written opinion, the trial

court considered each of the RCW 26.09.090 factors and lamented the lack of evidence William

provided to support his request: "[F]or reasons that are not clear to the court given the request, the

husband presented virtually no testimony or other evidence in support of his claim. In order to be

clear that something was not missed, the court obtained and re-listened to [William]'s entire

testimony." Clerk's Papers (CP) at 16. The trial court concluded,

> What the court must do is award maintenance in an amount and for a duration that is just. It is just for both parties to be able to meet their stated economic needs. It is just for the court to require a party who has more to help a party who has less, if there is an ability to do so, and if there is a need. It is just to require a party to take reasonable steps to provide for their own needs. It is unjust for a court to award maintenance based upon speculation.

CP at 22.

William appeals the trial court's determination of spousal maintenance.

ANALYSIS

William argues that the trial court abused its discretion by awarding him $850 per month

for 3 years in spousal maintenance. Specifically, he contends that the award is not just given his

barriers to working and Christine's monthly income. Given the trial court's broad discretion in

determining spousal maintenance awards, we disagree.

"We review a maintenance award for an abuse of discretion." *In re Marriage of Khan*, 182

Wn. App. 795, 800, 332 P.3d 1016 (2014). "'A trial court abuses its discretion if its decision is

manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (quoting *In re Marriage of Valente*, 179 Wn. App. 817, 822, 320 P.3d 115 (2014)). Where the trial court has weighed the evidence, our role on review is to determine whether substantial evidence supports the findings of fact and, in turn, whether the findings support the trial court's conclusions of law. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

The purpose of maintenance is to support a spouse until they are able to become self-supporting. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). "Maintenance is 'a flexible tool' for equalizing the parties' standards of living for an 'appropriate period of time.'" *In re Marriage of Wright*, 179 Wn. App. 257, 269, 319 P.3d 45 (2013) (quoting *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984)).

RCW 26.09.090 requires a trial court to consider all relevant factors before awarding maintenance in a dissolution proceeding, including but not limited to "(a) [t]he financial resources of the party seeking maintenance;" "(b) [t]he time necessary to acquire sufficient education and training to enable the party seeking maintenance to find employment;" "(c) [t]he standard of living established during the marriage;" "(d) [t]he duration of the marriage;" "(e) [t]he age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and (f) [t]he ability of the spouse . . . from whom maintenance is sought to meet [their] needs and financial obligations while meeting those of the spouse . . . seeking maintenance." "'The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just.'" *Kahn*, 182 Wn. App. at 800 (quoting *Valente*, 179 Wn. App. at 821).

I. AMOUNT OF MAINTENANCE

William argues that the trial court failed to properly address his financial needs. The trial court found that William has the resources to independently meet his needs. The trial court noted that William would have the ability to pay his credit card debt upon distribution of the proceeds from the sale of the marital home, which would leave him with income exceeding his stated needs by over $900 per month.[2] These findings are supported by the record.

William's financial declaration states that he has a monthly gross income of $1,655, monthly living expenses of $700, and monthly credit card payments of $250. At trial, William testified that he would like to move out of his brother's home in the future but did not provide any information as to what his anticipated living expenses may be. In weighing this evidence, the trial court acknowledged that William's living expenses could increase in the future but explained, "[T]he court is limited by the testimony provided, and can't make an award of maintenance that is based upon speculation that he may have higher costs in the future." CP at 17.

William contends that the trial court should have considered the disparity between William's disability income and Christine's income and determined an award to "put both parties in equal positions for the rest of their lives." Opening Br. of Appellant at 9. William cites *In re Marriage of Kim*, 179 Wn. App. 232, 253, 317 P.3d 555 (2014), and *In re Marriage of Rockwell*, 157 Wn. App. 449, 452, 238 P.3d 1184 (2010), to support his position. But both *Kim* and *Rockwell* involve the just and equitable division and distribution of property under RCW 26.09.080, not entitlement to spousal maintenance under RCW 26.09.090. The only limitation on the trial court's

---

[2] The trial court found that William would receive over $90,000 from the sale of the family residence after accounting for unpaid debts. CP 3.

discretion to set the amount and duration of maintenance is that the award be just. *Kahn*, 182 Wn. App. at 800. Justice does not require that both parties in a dissolution receive equal income for the rest of their postdissolution lives. And in light of the evidence presented, William fails to show that the trial court's award of maintenance in the amount of $850 per month was unjust.

## II. DURATION OF MAINTENANCE

William also argues that the trial court erred by limiting the spousal maintenance award to 3 years as opposed to awarding lifetime maintenance. William contends that lifetime maintenance is appropriate because his earning potential is diminished by his disability and there is no indication that will ever change. But the trial court thoroughly considered William's disability in making its maintenance determination.

The trial court found that William's physical and emotional condition is significantly impaired. The trial court noted that William's "age, and his physical and emotional condition, could easily lead to the conclusion that it would be just to provide him maintenance that is significant in duration and amount." CP at 20. But the trial court also found that William's financial needs are met despite his disability and that he has access to services that would allow him to expand his resources. These findings were also supported by the record.

At trial, William testified that he could work part time for additional income without impacting his disability benefits. He acknowledged that he also has access to retraining programs through the Social Security Administration but explained that he has not taken advantage of these programs due to frustration. William testified that he has insurance coverage that would allow him to access counseling services to help deal with his frustration. When the trial court asked William if there was anything preventing him from taking steps to lessen his financial needs, William

responded, "No, sir." VRP at 92. The evidence presented at trial supports the trial court's findings that William is disabled and also that he has opportunities to lessen his dependence on Christine in the future.

The purpose of maintenance is to support a spouse until they are able to become self-supporting. *Luckey*, 73 Wn. App. at 209. Permanent maintenance awards are disfavored, and Washington has long held a divorced spouse should gain employment if possible. *See Mose v. Mose*, 4 Wn. App. 204, 480 P.2d 517 (1971); *see also Warning v. Warning*, 40 Wn.2d 903, 247 P.2d 249 (1952); *Lockhart v. Lockhart*, 145 Wash. 210, 259 P. 385 (1927). The trial court did not err by limiting its spousal maintenance award to 3 years to permit William time to engage his resources to potentially expand his income, particularly where the evidence showed William's financial needs were met without spousal maintenance.

## III. NO ABUSE OF DISCRETION

Here, the trial court properly considered each of the statutory factors in fashioning its spousal maintenance award. The trial court's written opinion thoroughly articulates its reasoning as to each factor, noting the evidence—or lack thereof—supporting William's request of $2,200 per month for the rest of his life. The trial court's findings are supported by the evidence presented at trial, and its conclusion that spousal maintenance in the amount of $850 for 3 years was not manifestly unreasonable. Accordingly, we hold that the trial court did not abuse its broad discretion.

In the final line of his opening brief, William argues that this court should award attorney fees and costs. William cites no authority to support any such award. Accordingly, we do not award attorney fees or costs for this appeal.

No. 55051-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Maxa, J.

Veljacic, J.